HALL, Judge.
Plaintiff filed suit to have the local option election for Ward 2 of Morehouse Parish held on October 29, 1979, invalidated on the basis of alleged irregularities in election procedures. The four propositions permitting sale of alcoholic beverages within the ward were overwhelmingly rejected by the voters. In the trial court, plaintiff urged four irregularities as grounds to set the local option election aside. The trial court rejected plaintiff’s demands and he appeals. We affirm.
On appeal, as in the trial court, plaintiff argues that four irregularities occurred during the election process which should invalidate the election: (1) that there was not attached to the petition requesting the calling of the election a sworn verification showing the day, month, and year the petition was filed with the police jury as required by LSA-R.S. 26:586(A); (2) that the local option election was not separately called and held as required by LSA-R.S. 26:582, but was held in conjunction with other elections; (3) that one of the official voting commissioners attempted to influence the votes of two voters who cast their ballots in the election, contrary to the provisions of LSA-R.S. 18:1462 C; and (4) that the commissioners were not selected in compliance with LSA-R.S. 26:593 which requires they be selected in a manner so as to give, as nearly as possible, equal representation to the proponents and opponents of the propositions to be voted on.
Plaintiff operates a community grocery store located in Ward 2 of Morehouse Parish. On May 14, 1979, the Morehouse Parish Police Jury issued plaintiff a license to sell alcoholic beverages containing not more than 3.2 percent alcohol by weight. On June 28, 1979, a local option election petition was filed with the Morehouse Parish Registrar of Voters requesting a local option election in Ward 2. The petition was received by the registrar of voters in accordance with LSA-R.S. 26:585 and was filed with the police jury of Morehouse Parish. The police jury accepted the filing of the petition by the following notation: “Received in Jury Office July 3, 1979. E. A. Greer Sec-Treasurer.” On August 13, 1979, the police jury adopted a resolution calling for the local option election to be held in conjunction with the general election on October 27, 1979. The election was held and the official results, promulgated on October 30, 1979, reflected overwhelming rejection of all four of the local option propositions.
LSA-R.S. 26:586 A requires that the governing authority with whom the petition is filed by the registrar of voters attach to the petition its sworn verification showing the day, month, and year the petition was filed with it. The secretary-treasurer of the Morehouse Parish Police Jury did not attach the sworn verification required by the statute and plaintiff argues that this failure to comply with the statute should invalidate the election. The trial court determined that the lack of a sworn verification attached to the petition was not sufficient basis upon which to invalidate the election.
LSA-R.S. 18:1401 C provides:
“A person in interest may bring an action contesting any election in which any proposition is submitted to the voters if he alleges that except for irregularities or fraud in the conduct of an election the result would have been different.”
The failure to comply with the mandatory provisions of LSA-R.S. 26:586 A is not an irregularity which substantially affected the results of this local option election. In Kelly v. Village of Greenwood, 363 So.2d *519 887 (La.1978), it was held that an error in the date upon which the police jury called a local option election was not an irregularity which would affect the result of the election; therefore, the court found that the error did not require the invalidation of the local option election. The voters of Ward 2 overwhelmingly voted to make their ward “dry” and the failure of the secretary-treasurer of the police jury to attach a sworn verification of the date of the petition is not an irregularity which substantially affected the results of this election. The certification which was attached to the petition provided substantial compliance with the statute in that it did contain the date upon which the governing authority received the petition.
Plaintiff argues that the trial court erred in finding that the fact the local option election was held in conjunction with a multitude of other elections did not violate LSA-R.S. 26:582. That statute provides:
“Upon petition of not less then twenty-five percent of the qualified electors residing in any parish, ward, or any incorporated municipality the governing authority shall order a referendum election to be held to determine whether or not the business of manufacturing, producing, rectifying, distilling, blending, using, storing, distributing and selling alcoholic beverages, shall be conducted and licensed therein.
“In the case of such an election held on other then a parishwide basis the election shall be separately called and held, and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward. In the case of an election called on a parishwide basis the result shall be binding on the entire parish.
“No such election shall be held for the same subdivision oftener then once in every two years.”
The statute does not indicate that a local option election must be held at a separate time from other elections. Rather this statute requires that a local option election be separately called and held for each incorporated municipality, and for the unincorporated balance of a ward. Additionally, LSA-R.S. 18:1300, subd. A(l) expresses clear approval for the holding of an election in which a proposition is to be submitted to the voters in conjunction with an election for a public official. See also LSA-R.S. 18:402 F which establishes the dates on which an election on a proposition may be held; most of these dates are also dates on which a general election or primary election for public officials may be held. Plaintiff’s argument that a local option election must be held at a separate time from all other elections is without merit.
Plaintiff also argues that Earline Brown, one of five election commissioners for Ward 2, wrongfully urged two voters to vote against the four propositions permitting the sale of alcoholic beverages in Ward 2, in direct contravention of LSA-R.S. 18:1462 C. The cited statute prohibits any election commissioner from attempting in any manner to influence any voter to vote for or against any propositions being voted on in an election being held in the polling place where such commissioner serves. At trial, plaintiff offered the testimony of two voters who testified that Mrs. Brown urged them to vote against the four propositions. However, both voters testified that the solicitation had no influence on the way they cast their ballots. Even if the alleged solicitation had influenced these two voters, this would not have changed the results of the election in which the voters by an overwhelming majority voted the ward “dry.” Therefore, this alleged irregularity did not affect the outcome of the election. See LSA-R.S. 18:1401 C, quoted above.
Plaintiff’s final argument is based on LSA-R.S. 26:593 which provides:
“The parish board of supervisors shall appoint three commissioners and one clerk to preside over the election at each polling precinct. These appointees shall be qualified electors and residents of the precinct in which they serve. In making the appointment the board shall endeavor to give equal representation, as nearly as possible, to the proponents and opponents of the propositions to be voted upon.”
*520 It was established through testimony and stipulations in the trial court that four of the five election commissioners for the only precinct in Ward 2 signed the petition seeking the local option election. Plaintiff, therefore, argues that there was not equal representation as required by § 593. It was further stipulated at trial, however, that the plaintiff did not request any particular commissioner or commissioners to serve; nor, on the other hand, was he invited or solicited to do so. It was established through the testimony of one of the members of the election board of supervisors that the election commissioners were chosen by lot out of a group of about six or seven applicants and that no attempt was made to get equal representation of both sides of the issue. The evidence in the record does not establish that there was any improper conduct involved in the selection of the election commissioners which had any effect on the result of this election. Therefore, plaintiff’s argument in this regard has no merit.
For the reasons assigned, the judgment of the trial court rejecting plaintiff’s demands is affirmed at plaintiff’s costs.
Affirmed.